UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KEITH E. HOYD )
)
V. ) NO. 2:13-CV-165
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636, for a report and recommendation. Plaintiff's applications for Supplemental Security Income and Disability Insurance Benefits were denied following a hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 47 years of age at the time of his alleged disability onset date of August 1, 2009, a "younger individual" under the regulations. Prior to his administrative hearing and the subsequent hearing decision, the plaintiff reached the age of 50, an individual "closely approaching advanced age." He has a GED high school equivalent diploma. No one disputes that he cannot return to any of his past relevant work.

The plaintiff's medical history is set forth in the Commissioner's brief as follows:

> The medical evidence demonstrates a history of treatment for deep vein thrombosis (DVT) and pulmonary embolism (Tr. 161-171). Plaintiff was started on Lovenox and Coumadin, and advised to stop smoking (Tr. 161). On July 8, 2009, Plaintiff was examined by Dr. Bryan Nerren (Tr. 188-191). Plaintiff reported back pain that was aggravated by heavy lifting, and moderate leg pain with calf swelling due to DVT (Tr. 188). Dr. Nerren noted alcoholism with daily drinking (Tr. 188). Plaintiff stated he was no longer taking Coumadin (Wafarin), and only took over-the-counter Goody's Extra Strength (Tr. 188). On examination, Dr. Nerren noted mild tenderness in the right leg with 2+ edema (Tr. 190). Dr. Nerren found normal gait and station, and no tenderness or muscle spasm of the lumbar spine (Tr. 190). Dr. Nerren diagnosed Plaintiff with DVT, chronic back pain, lung wheezing, and chronic alcoholism (Tr. 190-191).
> On May 24, 2010, Dr. Krish Purswani examined Plaintiff (Tr. 203-206). Plaintiff alleged continued DVT, shortness of breath, low back pain, and nervousness (Tr. 203). Plaintiff confirmed that he was not taking any medication, but continued to smoke daily and drink regularly (Tr. 203-204). On examination, Dr. Purswani noted decreased breath sounds and rhonchi (Tr. 205). Trace edema was noted in the right leg with no tenderness (Tr. 205). Plaintiff would not perform the requested strength maneuvers (Tr. 205). Dr. Purswami diagnosed right lower leg pain due to DVT; shortness of breath; low back pain; nervousness, hypertension; and tobacco abuse (Tr. 206). Dr. Purswani stated Plaintiff could frequently lift up to 40 pounds,

2

and could sit up to 8 hours and stand/walk up to 6 hours in an 8 hour day (Tr. 206).

On June 9, 2010, Plaintiff underwent a psychological evaluation performed by Dr. Allan Koonce (Tr. 207-210). Plaintiff reported no history of mental health treatment (Tr. 208-209). Dr. Koonce indicated a mild impairment with short-term memory (Tr. 208). Dr. Koonce diagnosed Plaintiff with anxiety disorder; alcohol abuse (in partial remission); dysthymic disorder; and personality disorder, with antisocial features (Tr. 2009). Dr. Koonce concluded that Plaintiff's ability to understand and remember was not significantly limited, his ability to sustain concentration and persistence was mildly limited, his social interaction is not significantly limited, and his work adaptation was mildly limited (Tr. 210).[1]

On January 25, 2011, Plaintiff began treatment with Dr. David Merrifield at Appalachian Family Care (Tr. 248-250). Dr. Merrifield noted tenderness in the right leg with 1+ edema and he prescribed Plavix, Lortab and a daily aspirin (Tr. 250). On February 22, 2011, Dr. Merrifield diagnosed right leg pain, peripheral vascular disease, hypertension, chronic obstructive pulmonary disease (COPD), and a history of anxiety (Tr. 251). In April of 2011, Plaintiff's medications were changed to Lortab, Neurontin, Valium, sertraline, and Norco (Tr. 256). In May of 2011, Plaintiff reported improvement in his anxiety and COPD (Tr. 245). On August 5, 2011, Plaintiff reported having a few panic attacks with one occurring while he was in court for a child-support matter (Tr. 344). Dr. Merrifield added a prescription for acetaminophen-hydrocodone (Tr. 345).

On June 17, 2010, Dr. George Davis, a state agency psychologist, reviewed a portion of the medical evidence and concluded that Plaintiff did not have a severe mental impairment (Tr. 211-224). On July 3, 2010, Dr. James Millis, a state agency physician, reviewed a portion of the medical evidence and concluded Plaintiff retained the residual functional capacity to perform medium and light work (Tr. 225-233). Dr. Davis indicated Plaintiff could lift and carry up to 50 pounds occasionally and up to 25 pounds frequently (Tr. 226). Dr. Davis noted Plaintiff could sit and stand/walk up to 6 hours each in an 8 hour day (Tr. 226). Dr. Davis indicated Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 227). Dr. Davis also noted an environmental limitation against concentrated exposure to fumes, dusts, gases, etc. (Tr. 229).

On November 10, 2010, Dr. Karla Montague-Brown, another state agency physician, reviewed a portion of the medical evidence and concluded Plaintiff retained the residual functional capacity to perform light and sedentary work (Tr. 235-243). Dr. Montague-Brown indicated Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently (Tr. 236). Dr. Montague-Brown noted Plaintiff could sit and stand/walk up to 6 hour each in an 8 hour day (Tr. 236). Dr. Montague-Brown indicated Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 237). Dr. Montague-Brown also noted an environmental limitation against concentrated exposure to fumes, dusts, gases, etc. (Tr. 239).

---

[1]In actuality, *Mr.* Koonce is a psychological examiner acting under the direction of Dr. Stephen Lawhon, a licenced clinical psychologist who prepared and signed the report.

3

[Doc. 17, pgs. 2-4].

At the administrative hearing, the ALJ took the testimony of Dr. Robert Spangler, a Vocational Expert ["VE"], who reviewed the plaintiff's case file and listened to plaintiff's testimony. He asked Dr. Spangler to assume a person of plaintiff's age (which was 50 at the time), education and work background. He then asked Dr. Spangler to "assume this person can do light work; occasional posturals; no ropes, ladders, scaffolds; avoid concetrated exposure to hazards; limited to unskilled work; better with things than people." When asked if there would be jobs available for such a person, the VE opined that a person thus limited could do 70% of 1,985,000 jobs in the nation and 70% of 42,030 in the state. As examples of this work he mentioned assembler, hand packer, production machine tender, dishwasher, and janitor. (Tr. 49).

The ALJ then asked Dr. Spangler to assume the exact same individual, but with the added requirement of a sit/stand option. The VE stated that the available jobs would "be less 80% of the 70%, same jobs." (Tr. 50).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of deep vein thrombosis; chronic back pain; an anxiety order, NOS; a dysthymic disorder; and a personality disorder, NOS with antisocial features. (Tr. 20). He found that the plaintiff has the residual functional capacity ["RFC"] "to perform light unskilled work...that allows a sit/stand option; occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ropes/ladders/scaffolds or exposure to hazards (machinery, heights, etc.); and that involves working with things rather than people." (Tr. 22).

The ALJ then described the plaintiff's medical history in great detail, including the reports of Dr. Purswani, Dr. Lawhon, the State Agency physicians and psychologists, and his

4

treating physicians. (Tr. 22-25). In describing Dr. Lawhon's report, the ALJ noted the plaintiff's history of alcohol abuse, including current drinking; his three arrests for DUI, his arrest for public drunkenness; and his past history of cocaine and marijuana abuse.

He evaluated the plaintiff's credibility. While recognizing that the plaintiff had "some limitations" as a result of his back pain, the ALJ found that it did not preclude all work activity. He cited various findings in the medical records to support this conclusion, including his lack of surgery, specialized treatment from a spine specialist, examination results and plaintiff's failure to stop smoking despite numerous recommendations from his physicians to do so. From a mental standpoint, the ALJ also found that the plaintiff was not precluded from all work activity. The ALJ noted that no treating physician or psychologist had opined that the plaintiff was more restricted than the ALJ's RFC finding, and that the assessments from the consultative and State Agency evaluators found plaintiff's capabilities greater than the RFC finding. Finally, the ALJ noted that plaintiff's "use of alcohol and drugs would certainly exacerbate his mental condition." (Tr. 26-27).

Although the plaintiff could not return to any past relevant jobs with his present RFC, the ALJ found, based upon the VE's testimony, that the plaintiff could perform 5,880 jobs in the regional economy, and 260,000 in the national economy. Accordingly, he found that the plaintiff was not disabled. (Tr. 27-29).

Plaintiff first asserts that the VE's testimony cannot constitute substantial evidence for the ALJ's ultimate finding because it is "unclear." The argument is two-fold. First, plaintiff asserts that the mathematical computations are ambiguous. Second, plaintiff points out that the testimony that 20% of the "same jobs" described in the answer to the hypothetical which included the sit/stand option at the light level is nonsensical because two of the jobs identified

in the first hypothetical were those of dishwasher and janitor.

With respect to the mathematics, if one takes the percentages testified to by Dr. Spangler, one arrives at basically the numbers of jobs set forth in the hearing decision.[2] The plaintiff does raise an arguable point with regard to the jobs of janitor and dishwasher, to the effect that it would "defy common sense" to suggest that "those jobs would be performed in a seated position." [Doc. 15, pg. 8). As an initial matter, neither distinguished counsel, nor this Court, is a Vocational Expert. Also, Dr. Spangler was not taken to task on this by plaintiff's counsel at the hearing. (Tr. 50-51). Also, this argument does not account for the other jobs mentioned in the first hypothetical of assembler, hand packer and production machine tender. Common sense indicates that those jobs most likely would have a sit/stand option. Subtracting 80% from the 70% identified without the sit/stand option still constitutes a substantial number of jobs.

Plaintiff then asserts that the ALJ erred in considering plaintiff's age as 47, a younger individual, as he was at the onset date, rather than as 50, closely approaching advanced age, which he was at the time of the hearing and the ALJ's decision. Particularly, plaintiff points out that "the Administrative Law Judge analyzed the Plaintiff's claim under Rule 202.21 of the Medical-Vocational Guidelines..." Since plaintiff would have been disabled under Rule 201.14 at age 50 if he could perform a full range of sedentary work, counsel asserts that a proper utilization of *Social Security Ruling 83.12* would mandate a finding of disability. That ruling does address the situation where a person's abilities fall between two exertional levels. However, the ruling states that in such situations, "the adjudicator will need to consult a

---

[2]Actually, when the undersigned computed the number of jobs from Dr. Spangler's testimony, the figure was slightly higher than the number set forth in the ALJ's decision.

6

vocational resource..." rather than rely on the Grids. That is exactly what the ALJ did here, and the Court sees no merit in plaintiff's argument.

Finally, the plaintiff asserts that the ALJ erred in finding him not completely credible. The ALJ stated many adequate reasons for his finding in this regard as enumerated above. This argument is also without merit.

There was an abundance of substantial evidence to support the hypothetical question to the VE and the ultimate finding that the plaintiff was capable of engaging in substantial gainful activity. The Court finds that the ALJ did not err in applying the law and regulations. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be DENIED, and that the Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED.[3]

Respectfully submitted,

  s/ Dennis H. Inman
United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).